UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION–FLINT

| | |
|---|---|
| In re: | Case No. 16-30194 |
| TERESA MARY WILLERT, | Chapter 13 |
| Debtor. | Hon. Daniel S. Opperman |
| _____/ | |
| GARTH MCCOMB, SR., Successor Personal Personal Representative of the Estate of Mabel I. Willert, Deceased, and JAMES TREMBLEY, Attorney for the Estate of Mabel I. Willert, Deceased, | |
| Plaintiffs, | |
| v. | Adv. Proc. No. 16-3034 |
| TERESA MARY WILLERT, | |
| Defendant. | |
| _____/ | |

OPINION REGARDING EFFECT OF STATE COURT JUDGMENT
ON THIS ADVERSARY PROCEEDING

Background and Facts

This is a nondischargeability action brought by Plaintiffs Garth McComb, Sr., as Successor Personal Representative of the Estate of Mabel I. Willert, Deceased, and James Trembley, attorney for the Estate of Mabel I. Willert, Deceased. This action is brought pursuant to 11 U.S.C. § 523(a)(4), asserting that Defendant Teresa Willert, then daughter-in-law of Mabel Willert, during her service as the predecessor personal representative "illegally took funds from the Estate for her personal use" thereby committing fraud or defalcation while acting in a

1

fiduciary capacity. Plaintiffs do not allege embezzlement or larceny. The Plaintiffs base this action on an order entered in December 2015 by the Genesee County Probate Court ("Probate Court"), finding that Defendant had violated her fiduciary duty to Mabel Willert, which ordered Defendant to pay the probate estate a total of $53,486.33. This order followed a bench trial before Genesee County Probate Judge Jennie Barkey, regarding Defendant's alleged breach of fiduciary duty while serving as Mabel Willert's attorney-in-fact.

On July 10, 2008, Mabel Willert executed a durable power of attorney appointing Defendant as her attorney-in-fact. The Probate Court then appointed Defendant guardian for Mabel Willert, due to Mabel's mental deficiency and physical illness. Mabel Willert died in April 2013, and Defendant was appointed as the Personal Representative for her probate estate on October 28, 2013. Subsequently, in January 2014, the Probate Court granted a petition to have Defendant removed as Personal Representative. The Probate Estate, through successor Personal Representative Garth McComb, Sr., and the attorney for the Probate Estate, James Trembley, filed a petition against Defendant to recover funds based upon her alleged conversion, embezzlement, and breach of fiduciary duty.

Additionally, the Michigan Department of Community Health filed a claim against the Probate Estate in an amount that corresponds to the sum Defendant allegedly failed to report in her duties as Mabel Willert's attorney-in-fact. This claim contributed to the Probate Court's finding of liability against Defendant, although it is not clear to what extent. It is clear that after the non-jury trial in state probate court, it was found that Defendant was liable to the Probate Estate for breaching her fiduciary duty.

Defendant thereafter filed a Chapter 13 bankruptcy petition on January 31, 2016, listing a

non-priority unsecured debt owing to the Estate of Mabel Willert in the amount of $69,800, describing such as a "Judgment for mismanaging Adult Guardianship of Mother In Law, now deceased." Defendant also listed a priority unsecured debt owing to the Michigan Department of Health and Human Services in the amount of $7,100.00, for "Overpayment of Medicaid Issue for Adult Guardianship."

On March 17, 2016, Plaintiffs filed the instant adversary proceeding, and on August 7, 2016, Plaintiffs filed a motion for summary judgment, basing such upon the state court record and presenting three orders from the probate court. Plaintiffs also presented numerous requests for admission that were directed at Defendant in the probate matter. Defendant did not respond to these requests, and the probate court therefore deemed them admitted for purposes of that litigation. Plaintiffs also provided a transcript of what appeared to be the last hearing or last day of trial in the probate court. The Probate Judge stated at the beginning of that transcript that the purpose of that hearing was to discuss damages and attorney's fees. Thus, the Probate Court found that liability was not the focus for that hearing. The same conclusion was reached after review of other DVDs–liability could not be conclusively established from a review of these hearings. The only conclusion the Court can draw at the summary judgment stage is that a judgment was entered against Defendant, after the Probate Court noted that Defendant was guilty of poor bookkeeping, and that the Probate Court declined to award treble damages. These inconclusive findings were problematic for this Court as noted previously in its bench opinion denying Plaintiff's Motion for Summary Judgment, and, for the reasons detailed below, continues to be problematic.

After summary judgment was denied, both Plaintiffs and Defendants have filed

3

Affidavits, Supplemental Briefs and additional exhibits to such in support of their respective positions and "to narrow the issues for litigation through collateral estoppel determinations on various issues already litigated in the concluded state court proceedings." (Plaintiffs' Supplemental Brief, Docket No. 54).

Attached to the Supplemental Briefs, the parties attached the following additional exhibits:

(1) Affidavit of James Trembley, filed on January 6, 2017 (Docket #54), attesting to the allegations in Plaintiffs' Complaint, as well as referencing and attaching:

(a) Request for Admission of Genuineness of Documents filed, filed by Garth McComb, Sr., in Probate Court, dated June 25, 2014;
(b) Supplemental Request for Admission of Genuineness of Documents, filed by Garth McComb, Sr., in Probate Court, dated December 22, 2014;
(c) Copy of front and back of check dated May 29, 2008 from Mabel Willert to Teresa Willert in the amount of $10,000.00;
(d) Receipt of Certificate of Deposit withdrawal signed by Teresa Willert dated December 22, 2010, in the amount of $12,006.34;
(e) Deposit receipt into joint account at Citizens Bank of Mabel Willert and Teresa Willert showing a deposit of the $12,006.34 on December 22, 2010;
(f) Inventory Form filed in Probate Court signed by Teresa Willert on July 1,2011, attaching supporting documents;
(g) a bank envelope with Teresa Willert's handwritten notes of what she put in Mabel Willert's wallet for a trip to Florida in December 2010, totaling $1,128.00, $550.00 consisted of traveler's checks;
(h) Medicaid Application dated December 21, 2012, signed by Teresa Willert on behalf of Mabel Willert;
(I) Subsequent Medicaid Application dated February 3, 2013, signed by Teresa Willert on behalf of Mabel Willert;
(j) Subpoena in the Probate Court matter issued to FirstMerit Bank dated August 8, 2013, regarding Mabel Willert's accounts;
(k) Summary prepared by Trembley Law Office of one joint checking account, two joint savings accounts, and one joint Certificate of Deposit account; and
(l) Statement and Proof of Claim filed in Probate Court dated November 8, 2013.

(2) Defendant Teresa Willert's Responsive Brief, signed and notarized by Teresa Willert, filed on February 17, 2017 (Docket #62); and

(3) Supplemental Affidavit of James Trembley filed on February 28, 2017 (Docket

4

#63), referencing and offering further argument regarding Exhibits attached to January 6, 2017, Affidavit, and attaching two additional exhibits:

(a) Durable Power of Attorney dated July 10, 2008, signed by Mabel Willert, designating Teresa Willert as her Attorney in Fact; and
(b) Petition for Appointment of Guardian of Incapacitated Individual, signed by Teresa Willert as petitioner, dated January 18, 2011, as well as signed by Mabel Willert, nominating Teresa Willert as guardian.

The Court conducted status conferences following its bench ruling on Plaintiffs' Motion for Summary Judgment on December 14, 2016, January 11, 2017, January 31, 2017, February 22, 2017, March 1, 2017, and March 8, 2017. The Court also held a hearing on Defendant's motion for a jury trial on January 11, 2017, which the Court denied, as was memorialized in an Order denying that motion entered the same day.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts).

## Law

A. Section 523(a)(4)

First, Plaintiffs' Complaint does not allege facts concerning embezzlement or larceny. Thus, the Court's focus will be on "fraud or defalcation while acting in a fiduciary capacity.

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ." The Sixth Circuit has held that § 523(a)(4) requires:

(1) a fiduciary relationship
    (a) in the form of an express trust or
    (b) technical trust relationship;

5

(2) breach of that fiduciary relationship; and
(3) a resulting loss.

*R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 178-79 (6th Cir. 1997); *see also Patel v. Shamrock Floorcovering Services, Inc. (In re Patel)*, 565 F.3d 963 (6th Cir. 2009); *In re Johnson*, 691 F.2d 249, 251-52 (6th Cir. 1982) (finding that fiduciary capacity "applies only to express or technical trusts and does not extend to implied trusts, which are imposed on transactions by operation of law as a matter of equity" and "the requisite trust relationship must exist prior to the act creating the debt and without reference to it") (citations omitted).

To establish the existence of an express trust, the plaintiff "must demonstrate: (1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *In re Patel*, 565 F.3d at 968 (internal quotation marks and citation omitted).

Once the plaintiff has established the existence of a trust and that the defendant is a trustee of a trust, the burden of proof shifts to the defendant. In *Cappella v. Little (In re Little)*, 163 B.R. 497 (Bankr. E.D. Mich. 1994), the Court found that the question of burden of proof for defalcation while acting in a fiduciary capacity was a substantive question, and thus should be determined under state law. *Id.* at 502. In reviewing Michigan law, the *Cappella* Court found that

> Michigan courts have repeatedly stated in various contexts that a trustee must account to the beneficiaries for the disposition of trust funds. . . . Failure to properly so account is, by definition, a defalcation.
>
> It has been stated that the beneficiary has the initial burden of proving the existence of a fiduciary duty and the trustee's failure to perform it . . . [T]he burden then shifts to the trustee . . . to prove it acted with . . . good faith . . . and made full disclosure of all facts related to the transactions at issue. . . . [T]he mere failure to account establishes a loss.
>
> Since trustees have a duty to account under Michigan law, it is only

6

> logical that the Debtor, a statutory trustee, must prove that no defalcation
> occurred – i.e., that he be required to account for the trust funds he received. . . .
> [T]he Michigan Supreme Court has stated that where a trustee is called upon in a
> court of equity to account for the funds received by him as trustee, . . . the duty
> rests upon him to so account, and the burden of proof is upon him to establish the
> correctness of the account.

Id. at 500-01 (internal quotation marks and citations omitted).

The Sixth Circuit Court of Appeals has held that defalcation for purposes of § 523(a)(4) "occurs through the misappropriation or failure to properly account for those trust funds" by a fiduciary. *Garver*, 116 F.3d at 180 (citation omitted). It requires a "pre-existing fiduciary relationship." *Patel*, 565 F.3d at 968.

In *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754 (2013), the Supreme Court decided the level of intent required for defalcation under § 523(a)(4):

> [W]here the conduct at issue does not involve bad faith, moral turpitude, or other
> immoral conduct, the term [defalcation] requires an intentional wrong. We
> include as intentional not only conduct that the fiduciary knows is improper but
> also reckless conduct of the kind that the criminal law often treats as the
> equivalent. . . . Where actual knowledge of wrongdoing is lacking, we consider
> conduct as equivalent if the fiduciary consciously disregards (or is willfully blind
> to) a substantial and unjustifiable risk that his conduct will turn out to violate a
> fiduciary duty. That risk must be of such a nature and degree that, considering
> the nature and purpose of the actor's conduct and the circumstances known to
> him, its disregard involves a *gross deviation* from the standard of conduct that a
> law-abiding person would observe in the actor's situation.

Id. at 1759-60 (internal quotation marks and citation omitted).

### B. Collateral Estoppel

While collateral estoppel is applicable in bankruptcy dischargeability proceedings, *see Grogan v. Garner*, 498 U.S. 279, 248, 111 S. Ct. 654, 658, 112 L. Ed. 2d 755 (1991), a bankruptcy court must determine whether applicable state law would give collateral estoppel effect to the state court judgment. *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315,

7

317 (6th Cir. 1997). Under Michigan law, collateral estoppel has been defined by the Michigan Supreme Court:

> Collateral estoppel precludes the relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was 1) actually litigated and 2) necessarily determined.

*People v. Gates*, 434 Mich. 146, 154-55, 452 N.W.2d 627, 630 (1990). An issue may be considered "actually litigated" for collateral estoppel determinations if it "is put into issue by the pleadings, submitted to the trier of fact, and determined by the trier of fact." A trial is not necessarily required. *Latimer v. Mueller & Son, Inc.*, 149 Mich. App. 620, 640-41, 386 N.W.2d 618, 627 (1986). If an issue is essential to the judgment, it is "necessarily determined." *Gates*, 434 Mich. at 158.

"An issue is 'actually litigated' if it 'is put into issue by the pleadings, submitted to the trier of fact, and determined by the trier of fact.'" *Cresap v. Waldorf (In re Waldorf)*, 206 B.R. 858, 863 (Bankr. E.D. Mich. 1997) (citing *Latimer v. Mueller & Son, Inc.*, 386 N.W.2d 618, 627 (Mich. Ct. App. 1986)). "For collateral estoppel purposes, an issue may be 'actually litigated' without a trial." *Id.* (citing, *inter alia*, *Detroit v. Qualls* for the proposition that summary disposition decision qualified as "actually litigated"). Thus, parties "actually litigate[ ]" an issue by submitting to a Michigan state court on a summary disposition. Any issue submitted is "necessarily determined" by an order stating the court's decision on the motion. *Id.*

Analysis

The Court has considered all pleadings in this matter, including all attached exhibits, as well as the DVDs of hearings before the Probate Court submitted to this Court for review. For the reasons stated below, this Court concludes that Plaintiffs have failed to meet their burden of

proof by a preponderance of the evidence based upon the record before it. While the Court recognizes and appreciates the efforts of Plaintiffs and their counsel to narrow the issues and perhaps avoid a trial in this case, issues of fact remain as to Defendant's alleged fraud or defalcation while acting in a fiduciary capacity.

It may be likely that Plaintiffs have shown that Defendant acted in a fiduciary capacity for purposes of Section 523(a)(4), but Defendant has not admitted this fact in this action. Even if this element is considered proven at this juncture in the case, the state court record does not demonstrate the requisite "bad faith, moral turpitude, or other immoral conduct" demonstrating "an intentional wrong" to conclude that fraud or defalcation was committed by Defendant. Based upon this Court's review of the state court pleadings and the DVDs, at most, Judge Barkey found Defendant to be negligent in her duties and a "sloppy bookkeeper." The remaining findings made by Judge Barkey in the probate proceeding focused on the amount of damages, rather than facts and conclusions concerning the liability of Defendant. Thus, application of collateral estoppel to the state court record is inappropriate because it is impossible to determine from that record whether the required findings of fraud and defalcation were actually litigated and necessarily determined.

Plaintiffs point this Court to a recent decision issued in this District by Judge McIvor: *Vizachero v. Brazieka (In re Brazieka)*, Case No. 16-4839, slip. op. (Bankr. E.D. Mich. Mar. 1, 2017). In that case, the bankruptcy court held that the debtor defendant's failure to answer requests to admit were sufficient for the plaintiff to have obtained summary disposition under Michigan law on the Section 523(a)(2)(A) fraud issue before the court, and thus gave preclusive effect to the consent judgment entered by the state court. *Brazieka*, slip. op. at 12-13. The Court

9

finds the facts of that case distinguishable from this case.  In this case, what was served upon Defendant in the probate court proceedings was a "Request for Admission of Genuineness of Documents."  Defendants failure to respond to this request is the equivalent of Defendant's admission of such.  However, unlike the *Brazieka* case, the admitted genuineness of these documents does not establish fraud or defalcation while acting in a fiduciary capacity for a finding of nondischargeability under Section 523(a)(4).

Plaintiffs also focus on the above-referenced Medicaid Applications filled out by Defendant, which Plaintiffs argue were fraudulently filled out by Defendant and resulted in overpayment of benefits.  First, Defendant has not admitted to having committed fraud in filling out these applications.  Second, such would not make a difference in the end as to its impact on the probate estate because if the Medicaid benefits had not been paid, funds would have been taken from the probate estate to pay expenses in the end, which would have resulted in the same amount of Plaintiffs' alleged damages to the probate estate.

Conclusion

For the reasons stated above, the Court determines that it cannot, with the record before it, make the findings required for a determination of nondischargeability pursuant to 11 U.S.C. § 523(a)(4).  The Plaintiffs have a choice to make at this juncture: Plaintiffs may rest their case, which will result in a judgment in favor of Defendants; or Plaintiffs may request a trial date be set for the taking of further proofs.

The Court will schedule a telephonic status conference on **June 21, 2017, at 1:30 p.m.,** to discuss how the parties wish to proceed.

**Not for Publication**

**Signed on June 02, 2017**

                                                                       /s/ Daniel S. Opperman  
                                                                       **Daniel S. Opperman**  
                                                                      **United States Bankruptcy Judge**